RECEIPT NUMBER

S14271

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

32 Pgs
Attach A-C

KENT LAWRENCE FEHRIBACH, JR.,

Plaintiff,

v.

CITY OF TROY,

Defendant.

JUDGE : Gadola, Paul V.
DECK : S. Division Civil Deck
DATE : 09/27/2004 @ 10:26:50
CASE NUMBER : 4:04CV40279
CMP FEHRIBACH V. CITY OF TROY
(KC)

MAGISTRATE JUDGE KOMIVES

MICHAEL J. STEINBERG (P43085)
KARY L. MOSS (P49759)
American Civil Liberties Union
Fund of Michigan
60 W. Hancock
Detroit, MI 48201
(313) 578-6814

DAVID R. RADTKE (P47016)
KLIMIST, McKNIGHT, SALE,
McCLOW & CANZANO, P.C.
Cooperating Attorney, American Civil
Liberties Union Fund of Michigan
400 Galleria Officentre, Suite 117
Southfield, MI 48034
(248) 354-9650

FILED
SEP 27 AM 10 33
U.S. DIST. COURT CLERK
EAST. DIST. MICH.
DETROIT-PSG

## VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF

Plaintiff, Kent Laurence Fehribach, Jr., by his attorneys, brings this Verified Complaint for Declaratory and Injunctive Relief and other relief against Defendant City of Troy (hereinafter "Troy") and states as follows:

### INTRODUCTION

1.     Plaintiff files this 42 U.S.C. § 1983 action to challenge the constitutionality of two provisions of the Troy Political Signs Ordinance: (1) the provision prohibiting homeowners from placing political campaign signs in their yards more than 30 days before the election; and (2) the provision prohibiting homeowners from placing no more than two political campaign signs in

their yards.  Plaintiff asserts that these provisions violate the First Amendment to the U.S. Constitution.  Plaintiff seeks a declaration that the ordinance is unconstitutional, a temporary restraining order, an injunction enjoining its enforcement and other relief.

## PARTIES, JURISDICTION AND VENUE

2.      Plaintiff is a resident of Troy.

3.      Troy is a municipal corporation organized in and existing under the Constitution and laws of the State of Michigan.

4.      Jurisdiction is proper under 28 U.S.C. §§1331 and 1343, because federal questions are presented in this action under the First Amendment of the United States Constitution and 42 U.S.C. §1983.

5.      Venue is proper under 28 U.S.C. §1391(b)(1) and (2) because this is a judicial district where Defendant resides and where a substantial part of the events or omissions giving rise to the claims occurred or will occur.

## GENERAL ALLEGATIONS

6.      The Troy City Code contains two chapters regulating signs.  Chapter 85A regulates political signs (attached as Exhibit A) and Chapter 78 is a general sign ordinance (attached as Exhibit B).

7.      Chapter 85A(3)(b)(2) states, in relevant part, "No sign shall be erected or displayed earlier than thirty (30) days before an election." (Ex. A, p. 2)

8.      A political sign is defined as "a sign whose message relates to: The election of a person to public office, or to a political party, or to a public issue, which shall be voted on at an election called by a public body." Ch. 85A(1)(b).

2

9.      Chapter 85A(3)(b)(1) states, in relevant part, "No more than two (2) political signs shall be placed on any parcel of real property in one ownership." (Ex. A, p. 2)

10.     Plaintiff owns a home in Troy.

11.     On or about September 3, 2004, the day after George W. Bush was nominated as the Republican candidate for president in the November 2, 2004 election, Plaintiff placed a campaign sign in his yard to express his strong support of President Bush's re-election.

12.     The sign was a picture of the American flag with the letter "W" cut out of the middle.

13.     On or about September 7, 2004, a Troy housing and zoning inspector came to Plaintiff's home and spoke with Plaintiff's housemate, Shane Christ.

14.     The inspector asked Mr. Christ what the sign in the front yard meant.

15.     Mr. Christ replied that it was a sign in support of George W. Bush for president.

16.     The inspector then said that since it was a political sign, it had to be taken down until 30 days before the election.

17.     The inspector left a memo with Mr. Christ stating, in part, that political signs cannot be "erected or displayed earlier than thirty (30) days before an election." (See memo, Ex. C).

18.     The memo also stated that "no more than two (2) political signs can be placed on any parcel of real property in one ownership."  (Ex. C).

19.     On September 8, 2004, Plaintiff contacted Marlene Struckman, a Troy housing and zoning inspector.  Ms. Struckman said that Plaintiff's sign violated section 85A of the Troy City Code and that it must be removed until 30 days before the election.

20.     In order to comply with the law, Plaintiff removed the "W" sign from his yard.

21.     Plaintiff wishes to place two more yard signs on his property in addition to the "W" sign

to express his support for the election of Robert Gosselin to the Michigan House of

Representatives and to express his support for the election of Renee Perkins to the Oakland

County Commission.  Both candidates will appear on the November 2, 2004 ballot.

22.     In order to comply with the law, Plaintiff has refrained from placing the Gosselin and

Perkins signs on his lawn.

23.     Troy's general sign ordinance defines a "sign" as "any structure or wall or other object

used for the display of any message."  Chapter 78, § 2.02.01.

24.     Troy's general sign ordinance permits homeowners to install commercial signs for more

than 30 days.  For example, there is no time limit on the number of days a person may have a

construction sign on his property as long as the building is under construction.  *See* Ch. 78,  §

7.01.03.  (Ex. B, p. 7).

25.     A "for sale" sign and a "for lease" may be installed for a year as long as a property is for

sale and/or for lease.  *See* Ch. 78, §§ 3.02(A) and 7.01.06. (Ex. B, pp. 2 and  7).

26.     A homeowner may place a "garage sale" sign on his lawn four days a week (Thursday,

Friday, Saturday and Sunday) for a total of 208 days a year.  Ch. 78, § 302(C).   Similarly, a

homeowner may place an "open house" sign – or a "real estate sign for the purposes of providing

direction" – on his lawn three days a week (Tuesdays, Saturdays and Sundays) for a total of 156

days a year.

27.     There are no limitations contained in the general sign ordinance on when a homeowner

may place the following signs on his property: (1) a sign with an "informational" or "directional"

message; Ch. 78, § 3.04; (2) an American Flag, Ch. 78, § 3.07; (3) a state flag, *id.*; and (4) a

corporate flag, *id.*

28.     However, a homeowner would be violating the ordinance if he placed a political sign on his own property more than 30 days before the election.  Ch. 85A, § (3)(b)(2).

29.     Under Troy's sign ordinances, a homeowner may place numerous signs in his yard at any one time.  For example, it is possible for a homeowner to have all, or any combination, of the following signs up at the same time: (1) a "for sale" sign, Ch. 78, §§ 3.02(A) and 7.01.06; (2) a "for lease" sign, *id.*; (3) an "open house" sign, Chapter 78, § 3.02(B)(3); (4) a garage sale sign, Chapter 78, § 3.02(C); (5) a sign with an "informational" or "directional" message, Ch. 78, § 3.04; (6) an American flag, Ch. 78, § 3.07; (5); a state flag, *id.*; (6) a corporate flag; *id.* (7) a construction sign, Ch. 78 § 7.01.03; and (8) two political signs, Ch. 85A, § (3)(b)(1). (See Ex. A and Ex. B).

30.     However, a homeowner would be violating the ordinance if he placed a total of three signs in his yard if all three were political signs. Ch. 85A, § (3)(b)(1).

31.     If the prohibition against posting political signs more than 30 days before the election is enjoined, Plaintiff will put up his "W" sign as soon as the injunction is entered.

32.     If the prohibition against homeowners placing more than two political signs in their yard at a time is enjoined, Plaintiff will immediately place three political signs in his yard: the "W" sign, a sign urging the election of Robert Gosselin to the Michigan House of Representatives and the election of Renee Perkins to the Oakland County Commission.

33.     In elections held subsequent to the November 2, 2004 election, Plaintiff will post signs in support of his favorite candidates more than 30 days before election day if, and only if, Troy's 30-day provision is enjoined.

34.     In elections held subsequent to the November 2, 2004 election, Plaintiff will post more

5

than two political signs in support of his favorite candidates if, and only if, the provision

prohibiting the posting of only two political signs is enjoined.

## COUNT I:  THE 30-DAY PROVISION

35.      Plaintiff re-alleges and incorporates by reference the allegations contained in the

previous paragraphs as though fully set forth herein.

36.      At all relevant times, Troy was acting under color of law, within the meaning of 42

U.S.C. 1983.

37.      Any regulation of time, place and manner of political speech is impermissible unless it

(1) is content neutral; (2) is narrowly tailored to further the city's substantial interests; and (3)

leaves open ample alternative channels for communication of the information.

38.      Section 3(b)(2) of Troy's political signs ordinance, which prohibits homeowners from

placing political signs in their yards more than thirty days before an election, is not content

neutral.

39.      Section 3(b)(2) of Troy's political signs ordinance does not advance a compelling state

interest.

40.      Section 3(b)(2) of Troy's political signs ordinance is not narrowly tailored to further  a

substantial state interest.

41.      Section 3(b)(2) of Troy's political signs ordinance does not leave open ample alternative

channels for communication of information.

42.      Therefore, section 3(b)(2) of Troy's political signs ordinance violates the First

Amendment of the Constitution of the United States.

43.      Absent injunctive relief, Plaintiff and others will be hindered and chilled from

6

exercising their protected free speech and associational rights.

44.     There is not an adequate remedy at law.

## COUNT II- THE TWO POLITICAL SIGNS LIMIT

45.     Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as though fully set forth herein.

46.     Section 3(b)(1) of Troy's political signs ordinance, which prohibits a homeowner from placing more than two political signs on his property at a time, is not content neutral.

47.     Section 3(b)(1) of Troy's political signs ordinance does not advance a compelling state interest.

48.     Section 3(b)(1) of Troy's political signs ordinance is not narrowly tailored to further a substantial state interest.

49.     Section 3(b)(1) of Troy's political signs ordinance does not leave open ample alternative channels for communication of information.

50.     Therefore, section 3(b)(1) of Troy's political signs ordinance violates the First Amendment of the Constitution of the United States.

51.     Absent injunctive relief, Plaintiff and others will be hindered and chilled from exercising their protected free speech and associational rights.

52.     There is not an adequate remedy at law.

7

53.     Plaintiff requests that this Honorable Court:

    a.     Declare sections 3(b)(1) and 3(b)(2) of the Troy political signs ordinance unconstitutional on the grounds set forth above;

    b.     issue a temporary restraining order, preliminary injunction and a permanent injunction enjoining Troy from enforcing or threatening to enforce 3(b)(1) and 3(b)(2);

    c.     award Plaintiff nominal damages for the violation of his constitutional rights;

    d.     award Plaintiff costs and attorneys fees incurred in this lawsuit pursuant to 42 U.S.C. §1988; and

    e.     grant such other and further relief as shall be just and proper.

Respectfully submitted,


MICHAEL J. STEINBERG (P43085)
KARY L. MOSS (P49759)
American Civil Liberties Union Fund
of Michigan
60 W. Hancock
Detroit, MI 48201
(313) 578-6814


DAVID R. RADTKE (P47016)
KLIMIST, McKNIGHT, SALE
McCLOW & CANZANO, P.C.
Cooperating Attorney, American Civil
Liberties Fund of Michigan
400 Galleria Officentre, Suite 117
Southfield, MI 48034
(248) 354-9650


Dated: September 27, 2004

8

## DECLARATION

I, Kent Laurence Fehribach, Jr., resident of Troy, hereby declare under penalty of perjury, pursuant to 28 U.S.C. Section 1746, that the allegations in the foregoing Verified Complaint are true and correct to the best of my knowledge and belief.

Dated: 9/22/04 _____          _____
                                        Kent Laurence Fehribach, Jr.



**Chapter 85A - Political Signs**

CHAPTER 85-A

POLITICAL SIGNS

1. <u>Definitions</u>

Unless it appears from the context that a different meaning is intended, the following words shall have the meanings given them in this section.

(a)     "Director" means the Building Official or his authorized representative of the City of Troy.

(b)     "Political Sign" means a sign whose message relates to: The election of a person to public office, or to a political party, or to a public issue, which shall be voted on at an election called by a public body. Signs relating to an expression of opinion may be included in this definition providing they are not signs as defined in Chapter 78.

(Rev. 9-23-96)

(c)     "Public Property" means all publicly-owned property, including streets, rights-of-way, easements, and everything affixed thereto and thereover.

(d)     "Sign" means and includes any bill, poster, placard, handbill, flyer, painting, sign or other similar object in any form whatsoever which contains printed or written matter in words, symbols, or pictures, or in any combination thereof.

2. <u>Measurement of Sign Area</u>

For the purpose of this Chapter, for either single face or double face signs, the area of the sign shall be determined by calculating the outermost dimensions of any circle, triangle, rectangle or other geometric shape enclosing the extreme limits of writing, representation, emblem or any similar figure, together with any frame or other material forming an integral part of the display or used to differentiate such sign from the background against which it is placed. For a sign so arranged that the faces are greater than twenty-four (24) inches from one another or such sign with any two (2) faces that form a "V" in plan and the angle of the "V" is greater than fifteen (15) degrees, the total area shall be computed as a single face sign.

(Rev. 2-1-99 - Effective April 6, 1999)

3. <u>Political Sign Control</u>

(a)     Political signs may be erected in addition to all other signs permitted by Chapter 78 without a permit if they comply with the provisions of this section. Permission shall be obtained from the property owners where signs are located.

(Rev. 01-13-03)

1

Chapter 85A - Political Signs

    (b)    Uses:  Political signs shall be solely for the purpose of providing information relating to the election of a person to public office, or relating to a political party, or relating to a matter to be voted upon at an election called by a public body, or any other public issue or expression of opinion, and shall be permitted subject to the following conditions.

        (1)    Maximum Area and Number:  No more than two (2) political signs shall be placed on any parcel of real property in one ownership and the area of each sign shall not exceed two and one half (2.5) square feet.  Political Signs shall not be located closer than twenty (20) feet to the edge of the traveled portion of the roadway and not in a dedicated right-of-way.  Political signs shall be ground or wall signs, no ground sign shall be higher than thirty-six (36) inches above average mean grade of the yard on which it is placed.

            (Rev 2-1-99 - Effective 4-6-99)

        (2)    No sign shall be erected or displayed earlier than thirty (30) days before an election or event to which it relates, and shall be removed within ten (10) calendar days after the event or election.  Signs that express an opinion unrelated to an election date are limited to a period of display not to exceed thirty (30) days in one (1) calendar year on any parcel of real property in one ownership.  Signs shall not be attached to any utility pole or be located within any public right-of-way.

        (3)    Such signs shall not be erected in such a manner that they will or reasonably may be expected to interfere with, obstruct, confuse or mislead traffic.

            (Rev. 12-19-77)

4.    Removal of Illegal Signs

The Director, or his authorized agents, shall remove any political campaign sign found posted within the corporate limits of the City which is in violation of this Chapter.

(Rev. 12-19-77)

5.    Authority of the Directory

For the purpose of removing political signs, the Director or his authorized agents, are empowered to enter upon the property where the signs are posted, and the Director is further authorized to enlist the aid or assistance of any other department of the City and to secure legal process to the end that all such signs shall be expeditiously removed from any property where posted.

6.    Removal Procedure

Where the Director or his agents find that a political sign has been posted in violation of this Chapter, he shall remove the sign and store it in a safe location.

(Rev. 8-3-98)

Chapter 85A - Political Signs

7.   Storage -- Notice -- Return

If the Director or his agents remove any political sign, he shall keep a record of the location from which the sign was removed. He shall store the political sign in a safe location for at least seven (7) days, and shall immediately notify by telephone the candidate, committee or person responsible for the posting of the sign, indicating the fact of removal and the location where it may be retrieved. If the Director is unable to make telephone contact, he shall provide written notice, if the address of the candidate, committee or person is known or can be ascertained. The Director shall return any political campaign sign upon the payment of a fee of Ten ($10) Dollars for each sign, to cover the costs of removal, notice and storage.

**EXCEPTION:**  Beginning seven (7) days prior to any election the storage and notification requirements shall not apply to those illegal signs removed by the Director or his agents.

Illegal signs removed during this time period may be disposed of as necessary.

(Rev. 9-23-96)

8.   Removal of Sign - Charge

The City shall be entitled to receive the sum of Ten ($10) Dollars for every political campaign sign removed by the Director, to cover the expense of removal, notice and storage. In cases where unusual effort is needed to remove a sign, such as the cutting or removal of supporting structures, use of aerial devices, towing of "trailer signs", or other unusual situation, the City shall collect from the person responsible a sum sufficient to cover the costs and hourly wages of employees so utilized.

(Rev. 12-19-77)

9.   Persons Responsible

In a campaign for political office, the candidate for such office shall be deemed the person responsible for the posting of political campaign signs, unless he first notifies the Directory or another person who is responsible. In such case, the candidate shall provide the name, address, telephone number, and signed consent of such other responsible person.  In a campaign regarding a ballot measure, the president of the committee supporting or opposing such ballot measure shall be deemed responsible, unless he first notifies the Director or some other person responsible, in the manner described above. The candidate, or in the case of a ballot measure, the committee president, or other responsible person if so designated, shall be liable to pay any fees or costs for the removal and storage of illegal signs, as set out herein.

10.   Illegal Signs - Public Nuisance

Political signs in violation of this Chapter are hereby declared to be public nuisances, and may be abated by the City. The collection of removal fees shall not preclude the City from prosecuting the responsible person.

(Rev. 12-19-77)

B

Chapter 78

Signs

1.00        Short Title

This Ordinance shall be known as and may be cited as the City of Troy Sign Ordinance.

2.00        General Provisions

2.01        Findings and Purpose:

It is hereby determined that proliferation of signs in the City is unduly distracting to motorists and pedestrians, creates a traffic hazard, and reduces the effectiveness of signs needed to direct and warn the public.  It is also determined that the appearance of the City is marred by proliferation of signs.  It is also determined that proliferation of signs restricts light and air.  It is also determined that proliferation of signs negatively affects property values.  It is also determined that proliferation of signs results in an inappropriate use of land.  The purpose of this Ordinance is to control the occurrence and size of signs in order to reduce the aforementioned negative effects.  It is also determined that the signs of least value to people within the City are those which carry commercial messages other than the advertisement of any product, service, event, person, institution or business located on the premises where the sign is located or indicates the sale or rental of such premises.  It is also determined that the regulations contained in this Ordinance are the minimum amount of regulation necessary to achieve its purposes.  It is also determined that restrictions in this Ordinance on the size of signs, their height and placement on real estate, are the minimum amount necessary to achieve its purposes.

2.02        Definitions: For the purpose of this chapter, certain terms, words and tenses used herein, shall be interpreted or defined as follows:

2.02.01     Sign: A sign means any structure or wall or other object used for the display of any message.  Nothing in this ordinance shall be construed so as to prohibit ideological or noncommercial advertising on any sign on which commercial advertising is permitted.

2.02.02     Roof Sign: A sign which is erected, constructed or maintained upon, and projects above or beyond the roof or parapet.

2.02.03     Ground Sign: A free standing sign supported by one or more uprights, braces, or pylons located in or upon the ground and not attached to any building.

2.02.04     Projecting Sign: A sign which is affixed to any building or part thereof, or structure, which extends beyond the building wall or parts thereof, or  structure by more than twelve (12) inches.

(Rev. 04-24-95)

1

**Chapter 78 - Signs**

2.02.05    Wall Sign: A sign attached to, painted on, or placed flat against the exterior wall or surface of any building, no portion of which projects more than 12 inches from the wall, and which may not project above the roof or parapet line. The roof line means the vertical distance measured from the established grade to the highest point of the roof surface for flat roofs, the deck line of mansard roofs, and the average height between eaves and ridge boards for gable, hip and gambrel roofs.

2.02.06    Building Inspector: The Director of Building and Zoning or his authorized representative.

(Rev. 08-02-99)

2.02.07    Department: The Building Department of the City of Troy, its officers, inspectors and other employees.

2.02.08    Owner: A person, firm, partnership, association or corporation and/or their legal successors.

2.02.09    Person: Any individual firm, partnership, association or corporation and their legal successors.

2.02.10    Sign Erector: Any person engaged in the business of erecting, altering, or removing signs on a contractual or hourly basis.

2.02.11    Board of Appeals: Board of Appeals means the Building Code Board of Appeals.

(Rev. 07-19-99)

3.00    Signs Not Requiring Permits:

No erection permit shall be required for signs enumerated as follows by this paragraph. Such exemptions, however, shall not be construed to relieve the owner of the sign from responsibility for its proper location, erection, and maintenance.

3.01    Small Signs: Any sign erected on a premise which is not more than two square feet in area.

3.02    Sale, Rent or Lease Signs: Signs not to exceed six (6) square feet in area used to advertise real estate or garage sales and directional signs for such sales as further described below and limited to a height of 42". Signs located in a corner clearance shall not exceed 30" in height.

    A.    A real estate sign advertising a premise for sale, rent or lease, for a single dwelling or building or vacant land.

    B.    A real estate sign for the purpose of providing direction may be located on private property on Sundays, Tuesdays and Saturdays with permission from the property owner.

    C.    A garage sale sign having the dates of the sale clearly indicated for the purpose of providing direction may be located on private property on Thursday, Friday, Saturday and Sundays with permission from the property owner.
        (Rev. 06-07-99)

2

<u>Chapter 78 - Signs</u>

3.03      <u>Street Signs</u>: Signs erected by the City, County, State or Federal Government for street direction or traffic control.

3.04      <u>Non-commercial Signs</u>: Signs containing non-commercial informational or directional messages which do not exceed six square feet in area.

3.05      <u>Interior Building Signs</u>: Signs located on the interior of buildings.

3.06      <u>Signs Not Visible From Rights of Way</u>: Signs not visible from any adjacent right-of-way which do not exceed thirty-six square feet.

3.07      <u>Corporate Flags</u>: Not more than one corporate flag when flown in conjunction with the American or State flag.

     (Rev. 11-27-95)

4.00      <u>Administration</u>

4.01      <u>Enforcement</u>: This Chapter shall be administered and enforced by the Building Inspector as provided for in Chapter 1 of the Troy City Code.

4.02      <u>Permit Required</u>: It shall be unlawful for any person to erect, re-erect, alter, or relocate any sign unless a permit shall have been first obtained from the Building Inspector, except as provided in Section 03.00 and a permit fee paid in accordance with the schedule adopted by resolution of the City Council.

4.03      <u>Application</u>: Applications for sign permits shall be made upon forms provided by the Building Department for this purpose and shall contain the following information:

4.03.01      Name, address and telephone number of applicant.

4.03.02      Location of the building, structure, or lot to which the sign is to be attached or erected.

4.03.03      Position of the sign in relation to nearby buildings, structures, property lines, and rights-of-way existing or proposed.

4.03.04      Two copies of the plans and specifications and method of construction and attachment to the building or in the ground.

4.03.05      Copy of stress sheets and calculations, if deemed necessary, showing the structure as designed for dead load and wind pressure in accordance with the regulations adopted by the City of Troy.

4.03.06      Name and address of the sign erector.

(04-24-95)

4.03.07      Insurance policy as required herein.

4.03.08      Such other information as the Building Inspector may require to show full compliance with this and other applicable laws of the City of Troy and the State of Michigan.

3

Chapter 78 - Signs

4.03.09    When the public safety so requires, the application containing the aforesaid material shall, in addition, bear the certificate or seal of a registered structural or civil engineer as a condition to the issuance of a permit.

4.03.10    Indicate the zoning district that the sign is to be located in.

4.04    Insurance Requirement: Permits may be issued to sign erectors only under the following conditions.

4.04.01    Insurance Certificates: Before a permit is issued for the erection of a sign, the installing company shall submit for filing with the Building Department, a Certificate of Insurance, approved by the City Attorney, for Public Liability in the amount of One Hundred Thousand ($100,000) Dollars for injuries to one person and Three Hundred Thousand ($300,000) Dollars for injury to more than one person, and Property Damage insurance in the amount of Twenty-Five Thousand ($25,000) Dollars for damage to any property due to the actions of himself or any of his agents or employees.

4.04.02    Lapsing of Insurance:  At any time the insurance of any sign erector is permitted to lapse, his right to obtain permits shall automatically be revoked.

4.04.03    Notification of Change: A sign erector shall notify the Building Department of any change in address, and if a firm or corporation, an change in ownership or management if other than that indicated on the Insurance Certificates.

4.04.04    Registration Required:  Sign erectors shall be registered with the City of Troy; registrations shall expire April 1st of each year.  Registration fee shall be established by a schedule adopted by resolution of the City Council.

5.00    Permit Fees:  Permit fees shall be determined based on size, type and height according to the following schedule:

| AREA | WALL SIGNS | | GROUND SIGNS |
|---|---|---|---|
|  | Painted on wall | Structurally Attached |  |
| Under 100 sq. ft. | $ 75.00 | $ 100.00 | $125.00 |
| 100 to 200 sq. ft. | 100.00 | 125.00 | 150.00 |
| 200 to 300 sq. ft. | 100.00 | 150.00 | 175.00 |

EXCEPTION:  Special Event Signs $30.00 per event.

(Rev. 10-6-97)

6.00    Construction Requirements

6.01    General Provisions:

6.01.01    Material Requirement:  All signs shall be designed and constructed in conformity to the provisions for materials, loads, and stresses of the latest adopted edition of the B.O.C.A. Code and requirements of this Chapter.

4

**Chapter 78 - Signs**

6.01.02     Fastenings: All signs must be erected in such a manner and with such materials to remain safe and secure during the period of use and all bolts, cables, and other parts of such signs shall be kept painted and free from corrosion. Any defect due to the fault of the erector shall be repaired by the erector.

6.01.03     Fire Escapes: No signs of any kind shall be attached to or placed upon a building in such a manner as to obstruct any fire escape.

6.01.04     Support Location: No pole, cable or support of any nature shall be placed on any publicly owned property, street right-of-way, or proposed street right-of-way.

6.01.05     Flashing Signs: Flashing or intermittent illumination of signs shall be prohibited.

6.01.06     Changeable Message Signs: The message change cycle of a changeable message sign shall be not less than one minute per message, except in a combined time and temperature sign where the change cycle shall not be less that 30 seconds.

6.01.07     Revolving Signs: Signs that revolve shall make no more than four complete revolutions per minute.

6.01.08     Traffic Interference: No advertising device shall be erected or maintained which simulates or imitates in size, color, lettering, or design any traffic sign or signal or other word, phrase, symbol, or character in such a manner as to interfere with, mislead, or confuse traffic.

6.01.09     Rehanging: In case of rehanging or re-erection of any sign, the erector must place his identification and the date on the sign.

6.01.10     Proximity to Electrical Conductors: No sign shall be erected so that any part including cables, guys, etc. will be within six feet of any electrical conductor, electric light pole, street lamp, traffic light, or other public utility pole or standard.

6.01.11     Sanitation: Property surrounding any ground sign shall be kept clean, sanitary, free from obnoxious and offensive substances, free from weeds, rubbish, and inflammable material.

6.01.12     Responsibility of Compliance: The owner of any property on which a sign is placed, and the person maintaining said sign, are equally responsible for the condition of the sign and the area in the vicinity thereof.

6.01.13     Erector's Imprint: Signs of every class must carry the identification of the sign erector in clearly legible letters.

6.02       Compliance Certificate Required:
             (Rev. 04-24-95)

6.02.01     Compliance Certification: All signs shall be inspected at original installation; if found to comply with this chapter, the sign shall be issued a certificate of compliance.

6.02.02     Inspections: The Director of Building and Zoning shall cause existing signs to be inspected if deemed necessary by him to determine continuation of compliance with the provisions of this chapter.

             (Rev. 7-12-99)

6.02.03    Concealed Work:  In cases where fastenings are to be installed and enclosed in such a manner that the Building Inspector cannot easily remove material to see the fastenings and material used, the sign erector must advise the Building Inspector so that the inspection may be made before concealment.

6.02.04    Removal of Signs:  Should any sign be found unsafe, insecure, improperly constructed or not in accordance with the requirements of this Chapter, the erector and/or owner shall be required to make the sign safe, secure and otherwise in compliance with the requirements of this Chapter within 30 days of notice.  Failure to comply shall result in an order to remove the sign within 48 hours from the time of notification in writing.

Exception:  Existing signs determined to be unsafe and an immediate hazard to health or safety shall be removed or repaired at the owner's expense within 48 hours of notification.

6.03       Illuminated Signs:

6.03.01    Illumination:  No sign shall be illuminated by other than approved electrical devices and shall be installed in accordance with the requirements of the regulations adopted by the City of Troy.  No open spark or flame may be used for display purposes unless specifically approved by the Building Inspector.

6.03.02    Shielding from Residential Districts:  Any lighting for the illumination of signs shall be directed away from and shall be shielded from any adjacent residential zoning districts and shall not adversely affect driver visibility on adjacent public thoroughfares.

7.00       Regulations for Permitted Signs

General Provisions:  The following conditions shall apply to all signs erected or located in any zoning district.

7.01.01    Signs in Right-of-Way:  No sign shall be located in, project into, or overhang a public right-of-way or dedicated public easement.

Exceptions:

A)    Signs established and maintained by the City, County, State, or Federal Governments.

B)    Banners, advertising civic events may be permitted on lighting poles within the median of Big Beaver Road, between Rochester Road and Cunningham Drive, for a period not to exceed thirty days, subject to the approval of the City Manager.

(Rev. 07-17-00)

C)    Residential development identification signs not more than five feet in height and not more than 50 square feet in area located within the median of boulevard entrance streets subject to City Council approval of design and materials and further subject to the execution of an agreement with the City of Troy covering liability and maintenance of the sign. The height of such signs shall further be subject to the corner clearance requirements of Figure 7.01.01.

(Rev. 11-04-02)

6

Case 4:04-cv-40279-PVG-PJK   ECF No. 1, PageID.21   Filed 09/27/04   Page 21 of 32



Figure 7.01.01

(Rev. 11-05-01)

7.01.02    Signs Overhanging Intersections:  No sign above a height of 30 inches shall be located within, project into, or overhang the triangular area formed at the intersection of any two street right-of-way lines (existing or proposed) by a straight line drawn between said right-of-way lines at a distance along each line of 25 feet from their point of intersection.

7.01.03    Construction Signs:   A building under construction may have one sign on the site of construction.  The sign may not exceed 10% of the square foot area of the front of the structure with a maximum size of 200 square feet.

7.01.04    Roof Projecting Signs:  Roof signs and projecting signs are prohibited.

Vacant Land Signs:

(a)    One sign not to exceed six square feet in area on parcels of vacant land two acres in size or less.

(b)    Signs on parcels of vacant land exceeding two acres shall not exceed 15 square feet of sign per acre of land or 15 square feet of sign per 100 lineal feet of thoroughfare frontage, not to exceed 100 square feet of sign area.  Signs shall be spaced 200 feet or more apart.

7.01.06    For Sale or Lease Signs:  For sale or lease signs shall be removed within 10 days of sale or lease or within one year of date of installation, whichever occurs first.

7.01.07    Neon Tubes: Installation of neon tubing used as borders or accent strips on the exterior of any building shall be prohibited.

(10-19-98)

**Chapter 78 - Signs**

8.00            Measurement of Signs:

8.01.00         Sign Area:  For the purpose of this Chapter, the area of the sign shall include the total area within any circle, triangle, rectangle or other geometric shape enclosing the extreme limits of writing, representation, emblem or any similar figure, together with any frame or other material forming an integral part of the display or used to differentiate such sign from the background against which it is placed.

8.01.01         Single Face Sign:  For a single face sign, the area shall be computed as the total exposed exterior surface in square feet.

8.01.02         Multi-faced Signs:  When the sign has two or more faces, the area of all faces shall be included in computing the area of the sign.

                Exceptions:

                1.      For a sign that has two or more faces placed back to back, the area shall be computed as one-half the total exposed exterior surface area in square feet.

                2.      For a sign that has two or more faces so arranged that the faces are greater than 24 inches from one another or such sign with any two faces that form a "V" is greater than 15 degrees, the area shall be computed as a single face sign.

8.01.03         Wall Signs:  When a sign consists solely of writing, representation, emblems, logos, or any other figure or similar character which is painted or mounted on the wall of a building or a self-supporting wall or fence, without distinguishing border, the area of such sign shall be computed as if it were framed by a border consisting of horizontal and vertical lines touching the outer limits of the sign and extending not more than one foot from smaller sign elements.  However, in no instance shall there be any line having a dimension of less than one foot.

                (Rev. 04-24-95)

8.02            Sign Height:  The height of the sign is measured from the ground to the highest point of the sign from the ground.

9.00            Schedule of Sign Regulations:

9.01            Permitted Signs:  Except as otherwise provided herein, signs shall only be permitted according to the following Tables, and Zoning District Regulations.

8

**Chapter 78 - Signs**

STANDARDS FOR GROUND SIGNS

TABLE A - GENERAL PROVISIONS

| Zoning District | Minimum Setbacks | Maximum Height | Maximum Area |
|---|---|---|---|
| All R and C-F | 10 ft. from Street | l2 ft. | See 09.02.01 & 09.02.02 |
| All B, H-S, O, R-C and Planned Auto Centers in M-1 | O* | See Table B | See Table B |
| M- | 10 ft from street* 50 ft. from "R" Dist. | 12 ft. | 100 sq. ft. Max. See 09.02.05 |

TABLE B - HEIGHT AND AREA REQUIREMENTS IN "O"  "B", "H-S", "R-C" AND PLANNED AUTO CENTER DISTRICT

| Setback Range | Height Maximum | Area Maximum |
|---|---|---|
| O ft. - 20 ft. | 10 ft. | 50 sq. ft. |
| 20 ft. - 30 ft | 20 ft. | 100 sq. ft. |
| 30 ft. + | 25 ft. | 200 sq. ft. |

* Indicates setback from existing street right-of-way, or from planned right-of-way (Master Thoroughfare Plan), whichever is greater.

(Rev. 04-24-95)

9

**Chapter 78 - Signs**

9.02        Zoning District Regulations:

9.02.01     R-1 and R-2 Districts:  Signs in single-family and two-family districts shall be permitted as follows:

    A.        Dwelling Units:  Not more than one of each sign described in Section 3.02.

    B.        Special Approval Uses Listed in Chapter 39, Section 10.30.00 and Subdivision Entrances:  One sign not to exceed 100 square feet in area.

    C.        Subdivision Under Development:  Signs in a subdivision being developed shall not exceed 200 square feet in area, and shall be spaced a minimum of 200 feet apart.

9.02.02     RM, RIT, CR-1 and CF Districts:  Signs in Multiple Family Housing or Cluster Housing, and Community Facility Developments shall be permitted as follows:

    A.        One sign not to exceed 100 square feet in area.

    B.        One additional sign not to exceed 36 square feet in area.

    C.        No sign shall be located closer than 30 feet to any property line of an adjacent R-1 or R-2 District.

9.02.03     All O and R-C Districts:  Each building shall be permitted signs as follows:

    A.        One wall sign for each building, not to exceed 10% of the area of the front of the structure to a maximum size of 200 square feet in area.

    B.        One ground sign in accordance with tables "A" and "B".

        Exception:  No sign shall be located closer than 30 feet to any property line of adjacent residential district.

    C.        One ground sign not to exceed thirty-six square feet in area when the site fronts a major thoroughfare.

    D.        Each tenant may have one wall sign on the ground floor not to exceed 20 square feet in area.  The sign must be located on the face of the area occupied by the tenant.  Individual ground signs for each tenant within an office building  shall not be permitted.

9.02.04     B-1, B-2, B-3 and H-S Districts:  Each business development (one or more uses within a building or buildings using common parking facilities) shall be permitted signs as follows:

    A.        Ground Sign:  One ground sign in accordance with Tables "A" and "B" above plus one not to exceed thirty-six square feet in area when the site fronts on a Major Throughfare.

        Exception: The Required setback for ground signs from adjacent residentially zoned property shall be the same as for buildings within the zoning district.

(Rev. 04-24-95)

10

Chapter 78 - Signs

  B. Wall Sign:  The total combined area of all  wall signs for each tenant shall not exceed 10% of the front area of structure or tenant area.  The signs must be located on the face of an area occupied by the tenant.

9.02.05 M-1 Districts:  Each M-1 development shall be permitted signs as follows.

  A. Ground Signs:  One ground sign in accordance with Tables "A" and "B" plus one not to exceed thirty-six square feet in area when the site fronts on a Major Thoroughfare.

  B. Wall Signs:  One wall sign for each building not to exceed 10% of the area of the front of the structure to a maximum of 100 square feet, plus one wall sign for each tenant, not to exceed 20 square feet in area. Signs must be located on the face of an area occupied by the tenant.

  C. In M-1 districts, in addition to paragraph  A. & B., an M-1 Site may be permitted an additional ground sign, provided:

   1. The sign is set back a minimum of 200 feet from any street right-of-way.

   2. The sign is located at least 1,000 feet from any sign exceeding 100 square feet in area.

   3. The sign does not exceed 300 square feet in area.

   4. The sign does not exceed 25 feet in height.

  D. In M-1 Districts a dealership within a Planned Auto Center shall be permitted signs as follows:

   1. One Ground Sign in accordance with Tables "A" and "B" above.

   2. Two additional signs not to exceed 20 square feet in area each.

10.00 Non-Conforming Signs:

10.01 Intent:  It is the intent of this Chapter to encourage eventual elimination of signs that, as a result of the adoption of this Chapter, become non-conforming. It is considered as much a subject of health, safety, and welfare  as the prohibition of new signs in violation of this Chapter.  It is the intent, therefore, to administer this Chapter to realize the removal of illegal non-conforming signs and to avoid any unreasonable invasion of established private property rights.

10.02 Continuance:  A non-conforming sign may be continued, and shall be maintained in good condition, but shall not be:

10.02.01 Replaced by another non-conforming sign.

10.02.02 Structurally altered so as to prolong the life of the sign.

(Rev. 04-24-95)

11

| 10.02.03 | Expanded. |

| 10.02.04 | Re-established after damage or destruction if the estimated expense of reconstruction exceeds 50% of the estimated replacement cost. |

11.00.00    Signs on Motor Vehicles

(Rev. 04-19-99)

11.01.00    No person, corporation, partnership or other legal business entity shall stand or park a motor vehicle on public or private property, in the City of Troy, for the purpose of advertising same "for sale" or "for trade".

(Rev. 04-19-99)

11.01.01    Exceptions:

A.    This section shall not apply to properly licensed auto dealerships and properly licensed used car lots.

B.    This section shall not apply to the owner of a motor vehicle who places a "for sale" or "for trade" sign on or within the vehicle provided:

1.    The vehicle is located only on the vehicle owner's residential property, and;

2.    The owner of the vehicle displays a clearly visible sign on the vehicle indicating the owner's name and address.

3.    Not more than one vehicle is displayed on the residential property.

(Rev. 08-02-99)

C.    This section shall not apply to the owner of nonresidential property who places or allows to be placed a "for sale" or "for trade" sign on or within the vehicle provided:

1.    Not more than one vehicle is displayed on the nonresidential property; and;

2.    The owner of the vehicle displays a clearly visible sign indicating the nonresidential property owner's consent to the display of the vehicle.

(Rev. 04-19-99)

11.01.02    A sign containing a phone number in or on a parked motor vehicle which was visible constitutes a presumption that the sign was for the purpose of offering the vehicle for sale or trade.

(Rev. 04-19-99)

11.01.03    Proof that the vehicle described in the complaint was parked in violation of this Section, together with proof that the defendant named in the complaint was at the time of the parking, the registered owner of the vehicle, constitutes a presumption that the registered owner is responsible for the violation.

(Rev. 04-19-99)

12.00    Appeals

12.01    General:  Any person aggrieved by any decision, ruling or order from the Building Inspector, may appeal to the Building Code Board of Appeals. The Building Code Board of Appeals may grant a variance after a public hearing. The appeal shall be made by filing with the Building Department an application for hearing before the Building Code Board of Appeals specifying the grounds for appeal.  The Director of Building and Zoning shall transmit to the Building Code Board of Appeals all documents relating to the appeal.

Upon receipt of the Appeal Application from the Director of Building and Zoning, the City Administration shall by resolution establish a date of the Public Hearing which date shall respect the following requirements:

1.    All owners of property within 300 feet of the property proposed to be the site of such sign shall be notified by U.S. Mail.

2.    Said notice shall be postmarked no less than 14 days before the date of the Public Hearing.

(Rev. 07-19-99)

12.02    Variances: The Building Code Board of Appeals has the power to grant specific variances from the requirements of this Chapter upon a showing that:

(Rev. 07-19-99)

12.02.01    The variance would not be contrary to the public interest or general purpose and intent of this Chapter;

12.02.02    The variance does not adversely affect properties in the immediate vicinity of the proposed sign; and

12.02.03    The petitioner has a hardship or practical difficulty resulting from the unusual characteristics of the property that precludes reasonable use of the property.

12.03    Duration of Variances:  No variance shall be given for a period greater than 15 years.  All variances shall terminate upon alteration or reconstruction of more than 50% of the sign or at a date set by the Building Code Board of Appeals, whichever occurs first.

(Rev. 07-19-99)

13.00    Penalties

13

13.01    General:  It shall be unlawful for any person to erect, construct, maintain, enlarge, alter, move, or convert any sign in the City of Troy, or cause or permit the same to be done, contrary to or in violation of any of the provisions of this Chapter.  Any person violating any of the provisions of this Chapter shall be guilty of a misdemeanor and, upon conviction of any such violation, shall be punishable with a fine of not more than $500 and not less than $50.  Any sign constituting an immediate hazard to health and safety is deemed a nuisance and may be removed by the Building Inspector at the expense of the owner of the sign.

13.02    Signs in Public Right-of-Way:  In addition to the penalties prescribed in paragraph 13.01, any sign erected in violation of this section in a public right-of-way may be removed by the Building Inspector or his authorized representative and stored in a safe location for at least 48 hours.  During this period of time the owner of the sign may obtain his sign upon request and payment of a fee of Fifty Dollars ($50) for each sign to cover the costs of removal and storage.  After 48 hours, the Building Inspector may dispose of the sign.

14.00    SPECIAL EVENT SIGNS

14.01    General:  Special sign permit requests for events such as, but not limited to, grand openings, vehicle shows/displays, craft shows, benefit rummage/bake sales and festivals occurring on sites, which exceed the signage permitted in this Chapter, shall be eligible for a Special Event Sign Permit, subject to the following provisions:

    1.    Submittal of plans indicating the following:

        a.    Site layout (building location, parking, etc.)

        b.    Number, size and location of signs including banners, flags, cold air balloons, other forms of signage.

    2.    Provide documentation detailing the purpose of the event and desired dates, and written approval of property owner, if the applicant is not the owner.

14.02    Special Event Sign permit shall be issued for no more than seven (7) consecutive days within any twelve (12) month period.

14.03    No more than four off-site signs related to the event may be permitted.  Such off-site signs shall be limited to six (6) square feet in area.  Applicant must also submit written approval from the owners of properties proposed for off-site signs, prior to obtaining a permit.

14.04    Any appeal from a determination of the Building Department relative to Special Event Signs shall be considered by the Building Code Board of Appeals, and shall be subject to the procedures and the fees as established by the Building Code Board of Appeals for Sign Variances.

    Exception: All fees related to a variance requested by those submitting proof of non-profit status, shall be waived.

    (Rev. 07-19-99)

(All Section 14.00 - 10-6-97)

14



TO:  TROY RESIDENT

FROM:  MARLENE STRUCKMAN - HOUSING &
ZONING INSPECTOR

SUBJECT:  POLITICAL SIGNS

NO SIGN SHALL BE ERECTED OR DISPLAYED
EARLIER THAN THIRTY (30) DAYS BEFORE AN
ELECTION.

_SIGN AREA & NUMBER:_  NO MORE THAN TWO
(2) POLITICAL SIGNS CAN BE PLACED ON ANY
PARCEL OF REAL PROPERTY IN ONE
OWNERSHIP AND THE AREA OF THE SIGN
SHALLNOT EXCEED TWO AND ONE HALF (2.5)
SQUARE FEET.

_PLACEMENT OF SIGN:_  SIGNS MAY NOT BE
LOCATED CLOSER THAN TWENTY (20) FEET TO
THE EDGE OF THE TRAVELED PORTION OF THE
ROADWAY (IF THERE IS NO SIDEWALK) AND
NOT IN A DIDICATED RIGHT-OF-WAY.  IF A
SIDEWALK IS PRESENT THE SIGN MUST BE
LOCATED AT LEAST ONE (1) FOOT BEHIND THE
SIDEWAL.  (NOTHING IS PERMITTED BETWEEN
THE SIDEWALK AND THE STREET).  POLITICAL
SIGNS MUST BE GROUND OR WALL SIGNS AND
SHALL NOT BE HIGHT THAN THIRTY-SIX (36)
INCHES ABOVE THE AVERAGE MEAN GRADE OF
THE YARD ON WHICH IT IS PLACED.

JS 44
(REV. 3/09)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Kent Fehribach

## DEFENDANTS
City of Troy

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **Oakland**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED **Oakland**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(C) ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)
David A. Radtke
400 Galleria Officentre, Suite 117
Southfield, MI 48034
(248) 354-9650

Michael J. Steinberg
60 W. Hancock
Detroit, MI 48201
(313) 578-6800

ATTORNEYS (IF KNOWN)
Lori Grigg Bluhm
500 W. Big Beaver Road
Troy, MI 48084

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR
(For Diversity Cases Only) AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

### TORTS

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury— Med. Malpractice
- ☐ 365 Personal Injury— Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☒ 440 Other Civil Rights

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence

HABEAS CORPUS
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

### FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt.
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DWC/DIWW
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant
- ☐ 871 IRS — Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUES UNLESS DIVERSITY)
This is an action to challenge the constitutionality of Troy's sign ordinance with respect to political signs.

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $ nominal

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☒ NO

## VIII. RELATED CASE(S) (See Instructions):
JUDGE _____ DOCKET NUMBER _____

DATE
September 27, 2004

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# PURSUANT TO LOCAL RULE 83.11

1.          Is this a case that has been previously dismissed?          ☐ Yes
                                                                          ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.          Other than stated above, are there any pending or previously          ☐ Yes
            discontinued or dismissed companion cases in this or any other         ☒ No
            court, including state court? (Companion cases are matters in which
            it appears substantially similar evidence will be offered or the same
            or related parties are present and the cases arise out of the same
            transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :