UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENT LAWRENCE FEHRIBACH, JR.,

                       Plaintiff,

                                      CIVIL CASE NO. 04-40279

v.

THE CITY OF TROY,                      HONORABLE PAUL V. GADOLA
                                                    U.S. DISTRICT COURT
                       Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

      Before the Court are Plaintiff Kent Fehribach's and Defendant City of Troy's cross motions for summary judgment, both filed on September 16, 2005. For the following reasons, the Court will deny the City's motion and grant Plaintiff's motion.

**I.    Background**

      Less than a week after Plaintiff had placed a political sign in his front yard advocating for a candidate for the November 2, 2004 presidential election, a City of Troy housing inspector advised him that it had to be taken down because it violated the City's ordinance regulating political signs, Chapter 85-A of the City of Troy Code. Specifically, section 3(b)(2) of the ordinance prohibited the display of political signs regarding an election except for thirty days prior to, and ten days after, the election. Chapter 85-A also contained a provision, section 3(b)(1), which limited the number of political signs on any parcel of real property to two signs. Chapter 85-A was solely concerned with regulating political signs. The City had a separate ordinance, Chapter 78, concerned with the

regulation of signs generally.

Wishing to erect his presidential candidate sign more than thirty days prior to the election, and wishing to erect two additional political signs for state and local candidates, Plaintiff filed his "Verified Complaint for Declaratory, Injunctive and Other Relief" on September 27, 2004. In addition to seeking a temporary restraining order ("TRO") and a preliminary and permanent injunction enjoining the City from enforcing the applicable sections of the political sign ordinance, the complaint also seeks declaratory relief, nominal damages, costs, and attorney's fees. Contemporaneous with his complaint, Plaintiff filed a motion for a TRO, which was granted by Judge George Caram Steeh, acting as presiding judge, after a hearing on September 29, 2004. Plaintiff then filed a motion for a preliminary injunction seeking to enjoin the City from enforcing the numerical limit of the ordinance. Plaintiff did not then seek to enjoin the enforcement of the provision which prohibited the display of election signs except for thirty days prior to an election because, at the time, the election in question was less than thirty days away. The Court granted Plaintiff a preliminary injunction on October 18, 2004, on the grounds that, *inter alia*, Plaintiff showed a strong likelihood of success on his claim that the provision of the City's political sign ordinance limiting the number of political signs was unconstitutional, because it was unlikely that the City's ordinance would meet the requirements of a valid time, place, or manner restriction, or pass strict scrutiny. Essential to the Court's decision was its holding that the City's political sign ordinance was likely to be found to be a content-based speech restriction, because it was solely concerned with political speech.

On September 16, 2005, Plaintiff and the City filed cross motions for summary judgment.

Plaintiff's motion seeks a declaration that both the numerical and chronological limitations of the City's previous political sign ordinance were unconstitutional and an award of nominal damages. The City's motion, on the other hand, requests that the Court dismiss Plaintiff's complaint as moot because, on September 12, 2005, the City rescinded the political sign ordinance in question, Chapter 85-A, as well as its general sign ordinance which did not concern political signs, Chapter 78, and enacted a new sign ordinance, substantially different from the old ordinances, which regulates signs irrespective of whether they are political in nature. Plaintiff acknowledges that it is unlikely that the City will reinstate its previous ordinance and therefore foregoes his claim for a permanent injunction of those provisions.

**II.     Legal Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992); *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984); *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir. 1991).

**III.    Analysis**

    **A.    Mootness**

Federal courts possess subject matter jurisdiction only over actual cases or controversies. U.S. Const., Art. III, § 2.  A plaintiff must satisfy the "case or controversy" requirement throughout the pendency of the proceedings, and not only when he files the complaint.  *Grider v. Abramson*, 180 F.3d 739, 746 (6th Cir. 1999) (citation omitted).  In general a case becomes moot

> "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome;' or when subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur, or when subsequent events make it impossible for the court to grant to the prevailing party effectual relief, since "the thing sought to be prohibited has been done, and cannot be undone by any order of court."

*Parsons Inv. Co. v. Chase Manhattan Bank*, 466 F.2d 869, 871 (6th Cir. 1972) (citations omitted).  In defining mootness, the Sixth Circuit has adopted the definition given in *Ex Parte Steele*, 162 F. 694 (N.D. Ala.1908):

> [A] moot case is one which seeks to get a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then existing controversy.

*Parsons*, 466 F.2d at 871 (quoting *Ex Parte Steele*, 162 F. at 701) .

The City argues that a declaration that its repealed political sign ordinance "cannot have any practical legal effect upon a then existing controversy" and that the City's repeal of the old political sign ordinance makes it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Id.*  Therefore, the City maintains that the case is moot.  Plaintiff counters

that his case is not moot because he seeks nominal damages to which he is entitled for the violation of his constitutional rights.

"Where one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy." *Powell v. McCormack*, 395 U.S. 486, 497 (1969). The Supreme Court has affirmed that nominal damages are available to "vindicate[] deprivations of certain 'absolute' rights that are not shown to have caused injury." *Carey v. Piphus*, 435 U.S. 247, 266 (1978). The Sixth Circuit stated that "a claim for nominal damages . . . is normally sufficient to establish standing, defeat mootness, and grant prevailing party status for the purpose of attorney fees under 42 U.S.C. § 1988." *Lynch v. Leis*, 382 F.3d 642, 646 n.2 (6th Cir. 2004). *See Murray v. Board of Trustees*, 659 F.2d 77, 79 (6th Cir. 1981) ("While we accept as not clearly erroneous his finding that plaintiff failed to prove actual damages, the Supreme Court's holdings in *Carey* [], require remand for the District Judge to consider in this § 1983 action plaintiff's claims for nominal damages and attorney fees."). The City contends that Plaintiff's request for nominal damages is insufficient to "have any practical legal effect upon a then existing controversy," and therefore does not present a live controversy. *Parsons*, 466 F.2d at 871. However, the Sixth Circuit does not seem to distinguish between compensatory damages and nominal damages for the purpose of determining mootness. In *Gottfried v. Medical Planning Servs.*, 280 F.3d 684 (6th Cir. 2002), the Sixth Circuit held:

> Indeed, where a claim for injunctive relief is moot, relief in the form of damages for a past constitutional violation is not affected. Moreover, while [the plaintiff] specifically sought compensatory damages and punitive damages in the amount of $ 200,000 from each defendant, nominal damages are also available in actions claiming a violation of constitutionally protected rights.

*Id.* at 691. Although the Court of Appeals did state that "a claim for damages must not be 'so insubstantial or so clearly foreclosed by prior decisions that the case may not proceed,'" it did not do so to preclude nominal damages, which by definition are insubstantial. *Id.* (quoting *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 9 (1978)). Instead, it was the Court's position that the mere assertion of a claim for damages would not defeat mootness if the possibility of prevailing on that claim was foreclosed or insubstantial: "The key question therefore is whether [the plaintiff] has a viable claim for damages. She does not." *Id.* Thus, in this Circuit, for the purposes of surviving mootness, damages are damages, be they compensatory or nominal.

For the contrary position, the City relies on the Supreme Court's holding in *Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990), and a concurring opinion in the Tenth Circuit case of *Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248 (10th Cir. 2004). In *Lewis*, the Supreme Court held:

> Where on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary judicial pronouncements on even constitutional issues obtained, solely in order to obtain reimbursement of sunk costs.

*Lewis*, 494 U.S. at 480. *Lewis*, however, is distinguishable. There, the plaintiff did not seek damages, let alone nominal damages, but only declaratory and injunctive relief. *Id.* at 475. When the underlying issue became moot due to a change in the law, the plaintiff sought to keep it alive by supplementing the record with a claim which became apparent only through the change in the law. In denying the supplement, the Supreme court noted that mootness would prevent the plaintiff from becoming the prevailing party for the purpose of awarding attorney's fees under, 42 U.S.C. § 1988.

Nevertheless, the Court stated, "This interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Id.* at 480.

In *Utah Animal Rights Coalition*, Judge McConnell stated in his concurring opinion that "[t]he Supreme Court has never held that a claim for nominal damages is sufficient to maintain the justiciability of a case that otherwise would be moot. In neither of the Supreme Court's leading cases on nominal damages did the issue of mootness arise." *Utah Animal Rights Coalition*, 371 F.3d at 1266. The Tenth Circuit majority, however, held that although "[i]t may seem odd that a complaint for nominal damages could satisfy Article III's case or controversy requirements, when a functionally identical claim for declaratory relief will not, . . . this Court has squarely so held." *Id.* at 1257 (footnote omitted). Judge McConnell did not contend that the majority had misunderstood Tenth Circuit precedent. Instead, he disagreed with that precedent. He recognized that "[t]he Sixth and Ninth Circuits, like ours, squarely hold that a claim for nominal damages is sufficient to render a case justiciable." *Id.* at 1268. And, as the concurring opinion of Judge Henry in *Utah Animal Rights Coalition* pointed out, while Supreme Court precedent does not conspicuously hold that a claim for nominal damages will provide justiciability in the face of mootness, "the cases clearly do not say that nominal damages do not provide justiciability." *Id.* at 1272. Furthermore,

> [I]t seems that the Supreme Court has stated, or at least come very close to stating, that nominal damages do prevent mootness. *See Buckhannon* [*Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 604-05 (2001)] (noting that, under the FHAA and the ADA, there must be a "judicially sanctioned change" in the parties' legal relationship before a party is entitled to an

7

award of attorneys' fees, and that "we have held that even an award of nominal damages suffices under this test"); *Farrar* [*v. Hobby*, 506 U.S. 103, 115 (1992)] ("As we have held, a nominal damages award does render a plaintiff a prevailing party by allowing him to vindicate his 'absolute' right to procedural due process through enforcement of a judgment against the defendant."); *see also City of Riverside v. Rivera*, 477 U.S. 561, 574 [] (1986) ("Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms."); *Carey*, 435 U.S. at 266. Thus an award of nominal damages is a judicially sanctioned change in the parties' legal relationship.

*Id.* at 1274.

### B.     Merits

Since Plaintiff's claim for nominal damages enables his action to survive mootness, the Court must address the merits of his constitutional attack on the City's repealed political sign ordinance. In granting Plaintiff's motion for a preliminary injunction, the Court held that Plaintiff had shown a strong likelihood of success on the merits by showing that the provision of the City's political sign ordinance which limited political signs to two in number was likely an impermissible time, place, or manner restriction that would not survive strict scrutiny. For the same reasons, the Court now finds that the numerical limitation of the City's repealed political sign ordinance was unconstitutional. Furthermore, although the Court did not address the ordinance's chronological limitation of election signs when it granted the preliminary injunction, the analysis applicable to the numerical limitation is also applicable to the chronological limitation. Therefore, both provisions of the City's political sign ordinance were unconstitutional.

#### 1.     The City's ordinance was not a valid time, place, or manner restriction

A valid time, place, or manner restriction meets three requirements: (1) it must be content-neutral; (2) it must be narrowly tailored to further substantial government interests; and (3) it must

leave open ample alternative means for communicating the desired message. *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 44 (1983). The City's political sign ordinance did not meet the requirements of a valid time, place, or manner restriction because it was content-based.

"[C]ontent-neutral speech restrictions [are] those that are justified without reference to the content of the regulated speech." *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986)(quotations omitted). Content-based restrictions, then, are those that restrict speech based on the content of the message. *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993). For a valid time, place or manner restriction, content-neutrality must extends not only to the particular position of the speaker, but also to the speaker's choice of topic. *Boos v. Barry*, 485 U.S. 312, 319 (1988). Whether a regulation is viewpoint-neutral is of no moment: "a regulation that does not favor either side of a political controversy is nonetheless impermissible because the First Amendment's hostility to content-based regulation extends . . . to prohibition of public discussion of an entire topic." *City of Cincinnati*, 507 U.S. at 428 (quotations omitted). In *Burson v. Freeman*, 504 U.S. 191, (1992), the Supreme Court found Tennessee's election law prohibiting solicitation of votes and display or distribution of campaign materials to be a facially content-based restriction because the statute was solely concerned with political speech. *Burson*, 504 U.S. at 196-98. The Supreme Court held that "the First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office." *Id*. at 191 (quoting *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 223, (1989)).

Both sections of the City's repealed political sign ordinance, the provision limiting the number of political signs and the provision limiting the time election signs could be displayed, were

clearly content-based because they only applied to signs containing content which was political. Notably, the City's housing inspector first had to determine what Planitff's sign referred to before he could inform Plaintiff that the sign was in violation of the ordinance. Whether Plaintiff could place a total of three signs in his yard and whether he could erect them over a month before an election all depended on whether the content of the signs were political or election related. Thus, by the "commonsense understanding of the term," the City's ordinance was not content-neutral. *City of Cincinnati*, 507 U.S. at 428. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) ("Government regulation of expressive activity is content neutral so long as it is *justified* without reference to the content of the regulated speech." (citations and quotations omitted)).

Because the City's ordinance fails to meet the first requirement, it is not a valid time, place, or manner restriction. Regarding the other two factors, the Court notes that in *Dimas v. City of Warren*, 939 F. Supp. 554 (E.D. Mich 1996), Judge Taylor invalidated similar ordinances in the city of Warren, which limited the number of signs to one per candidate and the time period to 45 days before an election. Judge Taylor held that the ordinances did not meet any of the requirements of a time, place, or manner restriction. The ordinances were content-based; not narrowly tailored to further the "significant" government interests of neighborhood aesthetics, property value, or traffic safety; and did not leave open alternative channels for communication of the message. *Id.* at 556-58. Furthermore, because the First Amendment affords special protection to speech in the home, the Supreme Court has accorded special "reverence" to yard signs, holding that the available alternatives to yard signs are not "adequate alternatives." *City of Laude v. Gilleo*, 512 U.S. 43, 54-56 (1994). *See also Arlington County Republican Committee v. Arlington County Virginia*, 983 F.2d

587, 595 (4th Cir. 1993) (holding that a two-sign limit does not leave open ample alternatives means because the "alternatives are insufficient in that they require too much time involvement (e.g., handbilling or canvassing), or too much expense.").

### 2. The City's ordinance was not a valid content-based speech restriction

The City's ordinance can still be found to have been constitutional despite being an invalid time, place, or manner restriction, but only if it can survive the strict scrutiny applied to content-based speech restrictions. A content-based speech restriction is constitutional if the "regulation is necessary to serve a compelling state interest and [] it is narrowly drawn to achieve that end." *Boos*, 485 U.S. at 321 (quoting *Perry Education Assn.*, 460 U.S. at 45).

The end of the City's repealed sign ordinance, generally, can be ascertained from the statute's findings and purpose, abridged here for brevity:

> It is hereby determined that proliferation of signs in the City is unduly distracting to motorists and pedestrians, creates a traffic hazard, and reduces the effectiveness of signs needed to direct and warn the public. It is also determined that the appearance of the City is marred by proliferation of signs. It is also determined that the proliferation of signs restricts light and air[,] negatively affects property values[, and] results in an inappropriate use of land. The purpose of this ordinance is to control the occurrence and size of signs in order to reduce the aforementioned negative effects.

Troy City Code, Chapter 78, § 2.01.

While such a purpose is commendable, it is not sufficient to justify the City's content-based political sign ordinance. "Although 'safety' and 'aesthetics' are substantial government interests, they are not compelling enough to justify content-based restriction on fully-protected, noncommercial speech." *King Enter., Inc., v. Thomas Township*, 215 F. Supp. 2d 891, 910 (E.D.

Mich. 2002)(Lawson, J.). Furthermore,

> residents have the same strong incentive to keep their property values up and to prevent visual clutter in their yards and neighborhoods as does the city. The private interests of owners in the market value of their property should very substantially diminish the city's concerns regarding the unlimited proliferation of signs.

*Dimas*, 939 F. Supp. at 557 (citing *City of Laude*, 512 U.S. at 58). "Residents' self-interest diminishes the danger of the 'unlimited' proliferation of residential signs that concerns the [city]." *City of Laude*, 512 U.S. at 58.

The narrow tailoring analysis used by strict scrutiny is more demanding than that required of time, place, or manner restrictions and necessitates a least-restrictive-alternative analysis. *See Ward*, 491 U.S. at 798 n.6. *Dimas* and *Arlington County* both used the less stringent narrow tailoring required of time, place, or manner restrictions to determine that similar statutes were not narrowly tailored. *Arlington County*, 983 F.2d at 595; *Dimas*, 939 F. Supp. at 557. Based on the reasoning of *Dimas* and *Arlington County*, the Court concludes that the ordinance's two sign limit and thirty day limit were not narrowly tailored to the degree required of strict scrutiny.

### 3. Summary

The City's repealed political sign ordinance's numerical and chronological limitations were not valid time, place, or manner restrictions, neither were they valid content-based free speech restrictions.

## IV. Conclusion

For the foregoing reasons, the Court concludes that the City's former political sign ordinance was unconstitutional and Plaintiff is entitled to an award of nominal damages. Accordingly, **IT IS**

**HEREBY ORDERED** that Defendant's motion for summary judgment [docket entry 21] is **DENIED** and Plaintiff's motion for summary judgment [docket entry 22] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff is awarded nominal damages in the amount of one dollar ($1.00).

**SO ORDERED.**

Dated:   January 30, 2006                                    s/Paul V. Gadola
                                                            HONORABLE PAUL V. GADOLA
                                                            UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on   January 31, 2006  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
  Lori G. Bluhm; David R. Radtke; Michael J. Steinberg; Christopher J. Forsyth          ,
and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                                                                  .

                                                            s/Ruth A. Brissaud
                                                            Ruth A. Brissaud, Case Manager
                                                            (810) 341-7845